Filed 4/21/22  Garrard v. Total Lender Solutions CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CAROL GARRARD, et al.,<br><br>  Plaintiffs and Appellants,<br><br>v.<br><br>TOTAL LENDER SOLUTIONS, INC., et al.,<br><br>  Defendants and Respondents. | H047728<br>(Monterey County<br> Super. Ct. No. 16CV002776) |

In this appeal, we review the trial court's orders denying appellants' various efforts to regain title to a property subject to foreclosure.

In 2006, plaintiff and appellant Carol Garrard, as administrator of the estate of her mother, Alice Richardson, took out a loan secured by property in Seaside, California. Approximately ten years later, and following several rounds of litigation, the investors who funded the loan in exchange for a security interest in the property—defendants and respondents Chris Podlewski and Michael and Susan Reed (the Reeds), and defendants Edward Von Deutsche, and Harold and Judith Levy (the Levys) (collectively the Investors)—foreclosed on the property.  Defendant and respondent Ouita Martin LLC (Martin) purchased the property in October 2016 at the foreclosure sale; defendant and respondent Total Lender Solutions, Inc. (TLS) served as the substitute trustee for the trustee's sale.  Carol and her husband, plaintiff and appellant Kenneth Garrard (the

Garrards), both of whom were on title to the property prior to the 2016 sale, commenced this litigation in an effort to stop the foreclosure.

In the action below, the trial court denied the Garrards' motion to vacate a default judgment taken against them in a prior action in 2015, finding that the judgment which formed the basis of the 2016 foreclosure proceedings was not void on its face. The trial court simultaneously granted a motion for judgment on the pleadings filed by TLS, Podlewski and the Reeds as to one of the causes of action raised in the operative complaint, because the 2015 default judgment was not void on its face. The court also struck allegations in a second cause of action with respect to the so-called one action rule.

On appeal, the Garrards contend the trial court erred in ruling on these motions in several respects. They claim the trial court incorrectly determined that the lawsuit leading to the 2015 default judgment was not an "action" for purposes of Code of Civil Procedure section 726, subdivision (a), which allows only "one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property. . . ." They further claim that the default judgment was void as a matter of law and should have been set aside pursuant to Code of Civil Procedure section 473, subdivision (d), or on equitable grounds. The Garrards also contend the trial court erroneously failed to consider evidence concerning the validity of the 2015 default judgment.

Finding no error in the court's order denying the motion to vacate the 2015 default judgment we affirm the order. The order granting the judgment on the pleadings is not appealable, as the trial court has not yet entered a final judgment in this matter. As explained below, we decline to treat the appeal as a petition for writ of mandate. We will thus dismiss the appeal as it relates to the order granting judgment on the pleadings.

Intervener and appellant Robert Richardson is an heir to the estate of Alice Richardson, and a beneficiary of a 2007 lien against the Laguna property. On behalf of himself and the estates of several of his deceased siblings, Richardson filed a complaint

2

in intervention in 2019, seeking orders that would confirm the seniority of the 2007 lien, in addition to other relief. The orders at issue in this appeal do not explicitly address the complaint in intervention. Richardson appealed and joins in the Garrards' appeal in order to protect the interveners' interests. On appeal, Richardson appears to seek a ruling that the interveners are not bound by the 2015 default judgment or otherwise seek to collaterally attack the judgment themselves in this appeal. As the issue of the interplay of the 2015 judgment on the interveners' claims was not before the trial court in the orders that are the subject of this appeal, we decline to consider the effect of the 2015 judgment on interveners.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Carol is the administrator of the Estate of Alice Richardson, her mother. Carol and Kenneth were heirs of the estate and title holders of real property located at 1710 Laguna Street in Seaside, California (the Laguna property). In October 2006, Carol entered into a loan for $265,000 for improvements to the Laguna property, which at the time was an asset of her mother's estate. The parties who arranged and brokered the loan were not licensed in California. The Investors provided the funds for the loan, resulting in each obtaining a security interest in the Laguna property. The promissory note bore an interest rate of 12.5% basic interest plus a penalty of 17.5% in the event of default. The note was secured with a deed of trust, which was recorded against the Laguna property on October 30, 2006.

Carol's siblings, including appellant/intervener Richardson, inherited from Alice Richardson's estate an interest in a $180,000 promissory note secured by a second deed of trust against the Laguna property. The siblings' deed of trust was recorded on June 11, 2007.

### A. 2007 Foreclosure and 2008 Lawsuit

In or around 2007, the Investors initiated a non-judicial foreclosure based on Carol's failure to make any payments based on the original promissory note. The

3

Investors purchased the property at the trustee sale, at which time title to the property was transferred to the Investors pursuant to a trustee's deed upon sale. In March 2008, the Garrards filed an action against the Investors claiming wrongful foreclosure on the property based on a usurious loan, Monterey County Superior Court Case No. M90047 (the 2008 lawsuit).

The parties settled the 2008 lawsuit in a written settlement agreement in June 2011, following which the Garrards dismissed the lawsuit with prejudice. The parties confirmed that the October 2006 loan was unlawfully brokered, making the terms of the loan and the security for the loan unenforceable. They agreed to rescind the trustee's deed, as well as the notice of default and notice of sale that was recorded against the Garrards' title to the Laguna property, restoring the title to the Garrards, "said documents to be recorded seriatim with the new trust deed hereinafter provided." The parties agreed that the loan would be reentered upon new terms, including that they would execute and record a new note and trust deed conforming to the following provisions: "A) That the new term of the note shall be 12 months; B) That the new principal amount of the note shall be $200,000; C) That the note shall bear interest at 5% per annum, simple interest . . . . The written agreement did not explicitly require the Investors to reconvey the 2006 deed of trust. Certain terms of the settlement remained executory, resulting in the trustee's deed upon sale remaining the title of record from 2008 until it was rescinded in 2013.

### B. 2013 Lawsuit

Neither the Investors nor the Garrards paid property tax on the Laguna property from 2008, causing the Monterey County Tax Collector to record a property tax lien and notice of intent to sell in 2012. The Garrards filed Monterey County Superior Court Case No. M122093 (the 2013 lawsuit) to stay the tax sale and seek enforcement of the 2011 settlement agreement against the Investors. Before the property could be sold, the Investors and the Garrards reached an agreement to rescind the trustee's deed upon sale,

4

thus giving the Garrards standing to dispute the assessed taxes and enter into a payment agreement with the county. The Investors rescinded the trustee's deed upon sale on March 7, 2013, with notice recorded on March 11, 2013. The notice stated, "The express purpose for this Notice of Rescission is to return the priority and existence of all lienholders to the status quo ante that existed prior to the Trustee's Sale."

In their verified complaint in the 2013 lawsuit, signed and filed on February 28, 2013, the Garrards stated that the "essential terms" of the 2011 settlement agreement were that "1) Investors would cause [the trustee] to rescind the sale and restore title to Garrard; 2) Garrard would agree to execute a new note secured by the same trust deed (in effect a 'loan modification') at a reduced principal amount for a new term; and 3) Garrard would make payments and pay taxes and insurance for the term of the new note and, if necessary, secure refinancing at end of term of the new note." The trial court ultimately dismissed the complaint in 2016 with prejudice after the Garrards' attorney withdrew from the case in 2014, and no new documents were filed since the withdrawal.

### C. 2014 Lawsuit & 2015 Default Judgment

In 2014, the Investors filed an action to enforce the promissory note entered as part of the 2011 settlement agreement, Monterey County Superior Court Case No. M128920 (the 2014 lawsuit), setting forth causes of action for breach of contract, unjust enrichment, fraud, and declaratory relief, based on the allegation that the Garrards failed to make payments after the 2011 settlement agreement. The Investors claimed that they remained trustors of the Laguna property under the 2006 deed of trust. They alleged the parties' 2011 settlement agreement, a copy of which was attached to the complaint, "called for the modification of Note #1 [the original promissory note] to reset the amount of the new Note at principal reduction of $200,000, which was reduced from the original principal balance of $265,000, with interest at 5% per annum, payable monthly, interest only or more, all due and payable in 12 months, with all other terms and conditions of

Note #1 remaining the same."  The Investors attached an unsigned copy of "Note #2," the "new promissory Note" as an exhibit to the complaint.

The complaint alleged that the parties agreed that the Investors would record the notice of recission (NOR) of the trustee's deed upon sale in exchange for the Garrards signature on the new promissory note.  When the documents had not yet been signed in January 2013, the Investors alleged that the parties "verbally agreed to have the documents delivered to the Trustee of record, with the NOR to be recorded by the Trustee of record, upon execution of Note #2 by Garrard; and that Note #2 would be secured by the [deed of trust] of record, as a modification of the existing loan, rather than as a new loan.  These terms were for the purpose of efficacy of the Agreement and did not change the material terms of the loan.  Garrard executed a signed verification of those terms on February 28, 2013."[1]  The Investors recorded the NOR in March 2013 based upon representations that a promissory note containing the terms of "Note #2" had been signed by the Garrards.  The Investors learned in April 2014 that the Garrards had not signed such a note.  In their prayer for relief, the Investors asked the court to award general damages; "specific performance by execution of the Note #2"; declaratory relief regarding the Garrards' obligation to "execute and deliver a promissory note according to the terms in Note #2" and to make payments on that note beginning March 13, 2013; "Equitable Relief by return of title to [the Investors] as a mandatory order/injunction"; punitive damages; and attorney fees and costs.

In October 2014, the Investors filed a request to enter default against Carol, which they served on the Garrards by mail on the date of filing; the trial court entered Carol's default accordingly.  The request to enter Carol's default did not include a simultaneous

---

[1] In their brief on appeal, Respondents do not cite to any place in the record reflecting a signed verification of the terms of Note #2, other than to reference the Garrards' verified 2013 complaint, which was verified by Carol on February 28, 2013, the same date listed in the complaint the Investors filed in the 2014 lawsuit.

request to enter judgment. In February 2015, the Investors filed a request for entry of Kenneth's default, and for a court judgment against the Garrards. The Investors did not ask the trial court to include monetary damages in the default judgment; they sought only amounts for costs and attorney fees. The trial court denied the request on the grounds that the application was incomplete. In May 2015, the Investors again sought to enter default against Kenneth, and the trial court entered Kenneth's default on May 8, 2015. The May 2015 request to enter default did not request monetary damages, attorney fees, or costs. The provision of the request for default requiring confirmation of Kenneth's nonmilitary status is dated February 20, 2014, prior to the filing of the complaint.

At a prove-up hearing on May 11, 2015, the trial court entered a default judgment against the Garrards (the 2015 default judgment). In the judgment, the court stated that, at the hearing, the Investors, "sought equitable relief in the form of a judgment declaring that the Promissory Note, dated February 28, 2013, a copy of which is attached to this Judgment, is a valid obligation of [the Garrards], as though each had signed by Note, effective, as of the date of the rescission of the Trustee's Deed upon sale, March 11, 2013." The court entered judgment in accord with that request: "IT IS ORDERED that the Promissory Note dated February 28, 2013 in favor of [the Investors] is the obligation of each and every defendant, Carol Garrard individually and as Administrator of the estate of Alice Richardson and Kenneth W. Garrard. The effective date of the Note for purposes of when the obligation shall have begun is March 11, 2013. Said defendants are ordered to sign the Note. Failure of the defendants to sign the Note shall not invalidate the Note as it shall be valid, in its current state, for all purposes including non-judicial foreclosure."

### D. 2016 Foreclosure and Subsequent Lawsuit

Based on the 2015 default judgment, and the Garrards' subsequent failure to make payments, the Investors recorded a notice of default in June 2016. In September 2016, the Garrards filed the subject lawsuit seeking to stop the foreclosure on the Laguna

7

property, naming TLS and the Investors as defendants. They raised causes of action for "relief under the one action rule after judgment upon a secured promissory note," quiet title, breach of contract, and fraud. The Garrards also sought a temporary restraining order and/or preliminary injunction to prevent the foreclosure. As part of their request for injunctive relief, the Garrards alleged that the 2015 default judgment constituted the Investors' "one action" under Code of Civil Procedure section 726, subdivision (a), such that they could not foreclose on the security.

The trial court denied the temporary order, as well as a request for a preliminary injunction. In doing so, the court found that Code of Civil Procedure section 726[2] did not prohibit the Investors from proceeding with nonjudicial foreclosure because the judgment obtained in the 2015 lawsuit "was not for the enforcement of or collection on the subject Promissory Note secured by the subject Deed of Trust recorded as Instrument No. 2006095593[.]"

Martin purchased the Laguna property at a trustee sale in October 2016 and title of the property transferred to Martin by a trustee's deed upon sale. The Garrards amended their complaint in December 2016 to name Martin as a defendant. They thereafter filed a second amended complaint in May 2018 (SAC), which was the operative complaint at the time of the proceedings at issue in this appeal. In the SAC, the Garrards alleged causes of action for: "relief under the one action ruled and C.C.P. § 580 after declaratory judgment to enforce promissory note"; quiet title; breach of contract and for accounting under deed of trust; unjust enrichment; and fraud.

In stating the causes of action, the Garrards claimed that the 2015 default judgment violated section 580 as it did not state the nature of the non-monetary relief the Investors were seeking. They contended that the 2015 default judgment exceeded the court's jurisdiction to the extent it created a new or different security interest for the

_____

[2] Subsequent undesignated statutory references are to the Code of Civil Procedure unless otherwise noted.

8

property, and that the judgment was taken upon an "intrinsic fraud in the allegations of the verified complaint" and was unenforceable as entered. In the first cause of action they asked the trial court for a judicial determination that the judgment was unenforceable; they reiterated the request in their prayer for relief, asking the court to issue a judgment declaring that the 2015 default judgment "was in excess of jurisdiction, procured by fraud and unenforceable[.]"

Richardson, Carol's brother, and representative of the estates of Carol's other siblings, filed a complaint in intervention in 2019.[3] The trial court sustained in part and overruled in part TLS and the Investors' demurrer to the original complaint in intervention, after which Richardson filed a first amended complaint in intervention (FACI), alleging causes of action for quiet title, declaratory relief regarding the priority of the siblings' lien and entitlement to foreclosure sale proceeds, fraud and deceit, and conversion. Richardson named TLS, the Investors, and Martin as defendants; in addition he named as defendants Randall Newman, the president and chief officer of TLS, as well as Kathleen O. Mahan, the attorney who represented the Investors in the 2014 lawsuit, and who initially appeared for the Investors and TLS in response to the Garrards' 2016 complaint. Mahan filed an anti-SLAPP motion under section 425.16 in response to the FACI. The trial court denied the motion in August 2019; Mahan filed a notice of appeal from that order on November 8, 2019, designated appeal No. H047566.[4]

---

[3] The original complaint in intervention is not part of the record on appeal.

[4] The parties did not designate the trial court's order as part of the record on appeal but Respondents attached a copy of the order to their supplemental letter brief. On its own motion, this court takes judicial notice of that order. On its own motion, this court also takes judicial notice of the docket in appeal No. H047566, which shows that Mahan filed the initial notice of appeal on November 8, 2019. She filed an abandonment of the appeal in the trial court on December 13, 2019.

### 1. *Motions for Judgment on the Pleadings*

Podlewski, the Reeds, TLS and Newman (Respondents[5]) filed a motion for judgment on the pleadings regarding the first and second causes of action of the SAC on November 6, 2019. They argued that the one action rule did not apply, that the 2015 default judgment did not violate the Garrards' due process rights, that the Garrards were barred from relitigating the merits of the 2015 default judgment, and that there was not a surplus of $169,932.25 from the foreclosure sale, as alleged in the SAC. In opposition, the Garrards argued that the trial court had jurisdiction to decide whether or not to enforce the 2015 default judgment, as a void judgment is not res judicata and can be subject to later attack. They further contended that the 2015 default judgment was an election of remedies under the one action rule, and that the default judgment violated their due process rights because the complaint did not give them sufficient notice of the relief being requested by the Investors.

Respondents filed a separate motion for judgment on the pleadings as to Richardson's FACI on November 7, 2019, contending that the 2015 default judgment did not constitute an action under the one action rule, that the 2015 default judgment was enforceable against Richardson as he was in privity with Carol, and that Richardson was not entitled to any sale proceeds. Richardson opposed the motion on the grounds that the 2015 default judgment was void because it allowed for the enforcement of an illegal contract that should not have priority over Richardson's 2007 lien. Richardson denied being in privity with Carol for purposes of issue or claim preclusion. He also contended that he was entitled to plead that the 2007 lien was senior to the Investors' lien, or that he was entitled to post-sale surplus if it was found to be the junior lien.

---

[5] Podlewski, the Reeds, TLS, and Newman filed a combined respondents' brief, as well as a combined letter brief in response to the supplemental brief filed by Appellants. Martin filed its own respondent's brief and letter brief, and thus will be referred to separately from Respondents. Mahan, the Levys, and Von Deutsche did not file respondents' briefs.

10

## 2. *Motion to Vacate 2015 Default Judgment*

The Garrards filed a motion to vacate the 2015 default judgment on November 19, 2019.  They invoked the court's power under section 473, subdivision (d) to set aside a void judgment by direct or collateral attack, or by independent equitable action, alleging the trial court entered the default judgment in violation of section 580, and claiming that the judgment was otherwise void on its face.  They claimed that the complaint filed in the 2014 lawsuit showed that the 2006 trust deed was part of an illegal transaction, thus rendering the default judgment void on its face.  They further argued that the 2006 trust deed was an illegal contract because the broker did not have a California real estate broker's license and the loan was conducted across state lines in violation of federal statutes.  Because the promissory note attached to the 2015 default judgment required payment of all finance charges and interest upon entry of the judgment, the Garrards claimed that the judgment required payment of usury, thus rendering it void on its face.  Finally, the Garrards argued that, under section 580, they did not have proper notice of the relief that could be granted in the default judgment to support an inference that they were consenting to that judgment by not responding to the complaint.  They contended that they should have received notice of the requested non-monetary relief in the request to enter default, akin to what is required when seeking monetary relief.

Respondents opposed the motion to vacate, arguing that the 2015 default judgment was not void on its face based on review of the judgment roll because it complied with section 580; they claimed that the trial court was not allowed to consider extrinsic evidence to evaluate the validity of the judgment.  They further argued that the judgment was not void in fact; even if it was, the Garrards did not timely bring a motion to vacate such a void or voidable judgment.  In reply, the Garrards, seemingly joined by

11

Richardson (collectively Appellants),[6] reiterated their belief that the contract was void because it enforced an illegal contract and required the Garrards to pay usury. Regarding extrinsic evidence, Appellants contended that the defects in the judgment appeared on the face of the judgment roll, as the complaint did not sufficiently provide notice of the relief requested and the Garrards did not receive a copy of the proposed default judgment prior to its entry. Moreover, Appellants argued that they were attacking the void judgment in an equitable proceeding in which the court could consider extrinsic evidence. However, they asserted that the facts showing the alleged illegality did appear in the complaint and its attachments.

### 3. *Mahan's Appeal of Ruling on Anti-SLAPP Motion*

On November 20, 2019, Richardson filed a notice of stay pending appeal, indicating that Mahan had appealed the ruling on her anti-SLAPP motion, thus invoking a "stay of uncertain scope and duration" pursuant to section 916. The notice does not set forth an objection to the court proceeding on either Respondents' motion for judgment on the pleadings as to the Garrards' SAC, or the Garrards' motion to vacate the 2015 default judgment. The Garrards did not raise such an objection in their reply to the Respondents' opposition to their motion to vacate, or in their own opposition to the motion for judgment on the pleadings. Richardson filed an objection to Respondents filing a reply in support of their motion for judgment on the pleadings relating to his FACI, as well as "any further litigation of any element of this case under the [FACI]. . . . The court continued the hearing on Respondents' motion for judgment on the pleadings related to the FACI based on the appeal.

---

[6] The memorandum of points and authorities in support of the reply does not explicitly state that Richardson joined in the reply; the Garrards and Richardson have the same attorney, and the attorney signed the reply in his capacity as attorney for "Plaintiffs/ Interveners." By comparison, the attorney signed the notice of the motion to vacate the default judgment as "Attorney for Plaintiffs."

12

### 4. December 13, 2019 Hearing and Trial Court Order

On December 13, 2019, the trial court held a hearing on both Respondents' motion for judgment on the pleadings regarding the Garrards' SAC, and the Garrards' motion to vacate the 2015 default judgment. Although Respondents' motion for judgment on the pleadings regarding Richardson's FACI was also set for hearing that day, the court continued that matter due to the automatic stay in effect as a result of Mahan's appeal of the order denying the anti-SLAPP motion. Neither the Garrards nor Respondents objected to the court hearing the other motions due to the stay.

The court denied any request for judicial notice outside of the judgment roll, indicating that in considering the Garrards' motion to vacate, it looked only at the judgment roll.[7] The court determined that the only issue addressed in the 2015 default judgment was the investors' request to declare the February 28, 2013 promissory note to be a valid obligation, effective on the date of the recission of the trustees' deed upon sale. Because the court looked solely at the face of the judgment, the court did not perceive anything that revealed the judgment to be void on its face. Nor did it find that the judgment interest was usurious, or that the judgment granted relief in excess of the demands of the complaint. Thus, it denied the motion to vacate.

Based on its determination that the 2015 default judgment was a valid, not void, judgment, the trial court granted Respondents' motion for judgment on the pleadings as to the Garrards' second cause of action to quiet title without leave to amend, as that cause of action was based on the premise that the prior judgment was void. Regarding the first cause of action for declaratory relief, the trial court determined that the 2015 default judgment was not an "election of remedies" under section 726, as it was not an action to

---

[7] The reporter's transcript from the December 13, 2019 hearing includes frequent references to the "judgment rule" during the court and parties' discussions of what information the court considered in the ruling on the motion. It appears this was an error on the court reporter's part as the trial court's written order references the "judgment roll."

recover debt or enforce rights secured by the deed of trust; rather it was a suit seeking declaratory relief and compliance with the 2011 settlement agreement, such that the one action rule did not apply. The court struck "anything with respect to the one-action rule" from the Garrards' first cause of action without leave to amend, leaving only "issues with respect to an accounting in excess." The court denied the motion for judgment on the pleadings with respect to the accounting and the excess funds allegations. The court ordered Respondents' attorney to prepare a written order.

On December 24, 2019, the Gerrards filed a notice of appeal from the December 13, 2019 orders "purporting to enforce a void judgment and/or an illegal contract"; they attached to the notice a copy of the trial court's December 13, 2019 minute order. This court thereafter granted a motion for Appellants to file a combined appellants' brief.

Although Respondents submitted a proposed order to the court on December 23, 2019, the court did not file the written order until August 18, 2021, after this court issued an order to show cause why the appeal should not be dismissed as taken from a nonappealable order, in part because the trial court had not issued a written order as required by the minute order.[8] The trial court dated the order December 23, 2019, nunc pro tunc, claiming it was not processed at that time "due to error."

Upon receiving the written order from the trial court, this court deemed the instant appeal filed as of August 18, 2021, the filing date of the written order, and determined that the appeal could proceed as to the order denying the Garrards' motion to vacate the 2015 default judgment. However, this court ordered that the appeal from the order granting in part and denying in part Respondents' motion for judgment on the pleadings was premature, as the trial court had not yet entered a final judgment. We deferred ruling on Appellants' request to treat the nonappealable portion of the appeal as a writ of

---

[8] On its own motion, this court takes judicial notice of the August 18, 2021 order, which the trial court filed after the record on appeal was complete.

mandate or prohibition, and allowed the parties to file supplemental briefs addressing issues raised by Appellants concerning the content of the August 18, 2021 order.

## II. DISCUSSION

### A. *Appealability of August 18, 2021 Order*

We first consider whether the August 2021 order is appealable, or if it is not, whether it should be treated as a petition for writ of mandate.

The portion of the order denying the Garrards' motion to vacate the default judgment pursuant to section 473, subdivision (d) is immediately appealable. (See *Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1137.) As this court already stated in an order filed September 15, 2021, as to the portion of the order denying in part and granting in part Respondents' motion for judgment on the pleadings, or otherwise striking portions of the pleadings, the appeal of that order is premature, as the court has not yet entered a final judgment in this matter. (See *Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1212-1213; *Fraser-Yamor Agency, Inc. v. County of Del Norte* (1977) 68 Cal.App.3d 201, 207; *Warden v. Brown* (1960) 185 Cal.App.2d 626, 629.) In the Appellants' opening brief, they "seek the remedy of mandate to set the order(s) aside" in the event "an appeal from either order is defective in any way. . . ." We deferred ruling on this request for consideration with the appeal of the order denying the motion to vacate the default judgment.

This court has discretion to treat an attempted appeal from a nonappealable order as a petition for writ of mandate only in unusual or extraordinary circumstances, those which would indicate that a petition for writ of mandate was appropriate in the first instance. (*Olson v. Cory* (1983) 35 Cal.3d 390, 400-401 (*Olson*); *H.D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366-1367 (*Arnaiz*).) "[W]here an order is only reviewable on appeal from a later judgment, the court will consider the following factors in determining the adequacy of the appellate remedy: ' " 'prejudice resulting from delay,' " ' ' " 'inordinate pretrial expenses,' " ' ' " 'the possibility the

15

asserted error might not infect the trial,' " ' and ' " 'the possibility the asserted error might be corrected in a lower tribunal before or during trial.' " ' [Citation.] To obtain writ review, a petitioner generally must show his or her remedy in the ordinary course of law is inadequate or that the petitioner would suffer irreparable injury were the writ not granted. [Citation.] ' " 'A remedy is not inadequate merely because more time would be consumed by pursuing it through the ordinary course of law than would be required in the use of an extraordinary writ.' " ' [Citation.]" (*Duke v. Superior Court* (2017) 18 Cal.App.5th 490, 497-498.)

The instant case does not present "unusual circumstances" warranting that we treat the appeal as a petition for an extraordinary writ. (*Olson*, *supra*, 35 Cal.3d at p. 401; *Arnaiz*, *supra*, 96 Cal.App.4th at p. 1367.) An appeal from the final judgment will afford Appellants adequate remedy for any alleged errors in the court's order granting judgment on the pleadings as to the first and second causes of action. There is still the possibility the trial court could correct any alleged errors prior to entering judgment, particularly given that it has not yet heard Richardson's substantive claims on the FACI. On appeal, Richardson argues he is not bound by the trial court's rulings, an issue that the trial court has not yet heard. Reviewing the issues now would not prevent prejudice to the parties or reduce pretrial expenses. Nor have Appellants demonstrated irreparable harm if they are required to wait until there is a final judgment in the matter to pursue an appeal on these issues. We will dismiss the appeal as to the order granting the motion for judgment on the pleadings, and decline Appellants' request to treat the appeal from this nonappealable order as a petition for writ of mandate or prohibition.

### B. Jurisdiction

Based on the written order issued by the trial court on August 18, 2021, after the appeal had ostensibly been fully briefed, Appellants sought leave from this court to file a supplemental brief, "in order to address certain issues which arise because of the content of the trial court Order entered nunc pro tunc August 18, 2021, including inter alia, the

internal inconsistencies in the order, the ruling the illegality of a prior contract could be 'purged' by later agreement, or that taking a judgment in prior action M128920 was 'not an election of remedies' despite the One form of Action Rule (i.e., as if these were options available to defendant/respondents), which are now made express rulings rather than implied from the Minute Order on which the Brief was based." We granted the request.

In their supplemental brief, Appellants argue the trial court did not have jurisdiction to enter an order nunc pro tunc based on the December 13, 2019 hearing. While they frame the argument as one disputing the court's ability to enter the order nunc pro tunc, they more specifically argue that the trial court did not have jurisdiction to hold the proceedings on December 13, 2019, because of the automatic stay put into effect by Mahan's appeal from the order denying her anti-SLAPP motion to strike as it pertains to Richardson's FACI. To the extent the court did not have jurisdiction on December 13, 2019, they question whether it could cure the issue by dating the written order nunc pro tunc to December 23, 2019, after Mahan had abandoned her appeal. Notably, Appellants do not cite any legal authority to answer that question.

"[T]he perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." (§ 916, subd. (a).) When Mahan filed her appeal, the trial court's jurisdiction over the order denying the anti-SLAPP motion and any matters "embraced in" or "affected by" that order terminated and shifted to this court. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196-198 (*Varian*).) "In determining whether a proceeding is embraced in or affected by the appeal, we must consider the appeal and its possible outcomes in relation to the proceeding and its possible results. '[W]hether a matter is "embraced" in or "affected" by a judgment [or order] within the meaning of [section 916]

17

depends on whether postjudgment [or postorder] proceedings on the matter would have any effect on the "effectiveness" of the appeal.' [Citation.] 'If so, the proceedings are stayed; if not, the proceedings are permitted.' [Citation.]" (*Id*. at p. 189.) A subsequent proceeding is stayed if it "directly or indirectly seek[s] to 'enforce, vacate or modify [the] appealed judgment or order[,]' [citation]" or if the subsequent proceeding would "substantially interfere with the appellate court's ability to conduct the appeal. [Citation.]" (*Id*. at pp. 189-190, fn. omitted.) A subsequent proceeding "affects the effectiveness of an appeal if the possible outcomes on appeal and the actual or possible results of the proceeding are irreconcilable." (*Id*. at p. 190.)

On the other hand, the trial court may proceed with a subsequent proceeding if it concerns " 'ancillary or collateral matters which do not affect the judgment [or order] on appeal' "; we consider a proceeding to be ancillary or collateral if the proceeding "could or would have occurred regardless of the outcome of the appeal," even if the proceeding has a potential effect on the appeal. (*Varian*, *supra*, 35 Cal.4th at p. 191.)

Mahan sought review of the order denying her anti-SLAPP motion as it pertains to Richardson's FACI. While the FACI and the Garrards' SAC share certain legal issues, Mahan is not a defendant in the SAC. Even if the trial court had granted Mahan's anti-SLAPP motion, that ruling would have had no bearing on the trial court's proceedings as to the SAC. Nor did the trial court proceeding on the Garrards' motion to vacate the 2015 default judgment or the Respondents' motion for judgment on the pleadings of the SAC affect this court's ability to conduct Mahan's appeal. We conclude the trial court had jurisdiction on December 13, 2019, to hear the matters at issue in this appeal, even though Mahan had not yet formally abandoned her appeal pertaining to the FACI. We

18

need not consider whether the trial court could have cured any lack of jurisdiction with a nunc pro tunc order.[9]

As to other issues Appellants raised in their supplemental brief, we have considered them, as appropriate, in ruling on the substantive issues raised on appeal.

### C. *The Trial Court Did Not Err When It Denied the Motion to Vacate the 2015 Default Judgment*

Based solely on its consideration of the judgment roll, the trial court denied the Garrards' motion to vacate the 2015 default judgment finding that it was not void on its face. In doing so, the court found that the promissory note attached to the judgment "was not an illegal judgment," that the note was not usurious on its face, and that section 580 "[did] not apply to the [2015 default judgment] because the court in that action did not grant relief in excess of the demands in the complaint filed in that action." On appeal, Appellants contend the trial court erred in denying the motion. They claim the judgment was void on its face based on the judgment roll. Appellants argue the trial court was required to consider extrinsic evidence to determine the validity of the judgment, and erred in failing to do so. Pursuant to section 473, subdivision (d)—the authority on which Appellants based the motion to vacate the 2015 default judgment—we conclude the trial court properly denied the motion as it was not void on its face.

---

[9] " ' "A nunc pro tunc order or judgment is one entered as of a time prior to the actual entry, so that it is treated as effective at the earlier date." ' " [Citation.] Trial courts have the authority to enter nunc pro tunc orders to address clerical errors, but not judicial errors. [Citation.]" (*Sannmann v. Department of Justice* (2020) 47 Cal.App.5th 676, 683.) "[T]he court may enter a nunc pro tunc order . . . to enter the proper date of entry of order when the order was not filed timely due to inadvertence." (*West Shield Investigations and Sec. Consultants v. Superior Court* (2000) 82 Cal.App.4th 935, 950-951.) The trial court's August 18, 2021 order states it failed to enter the written order in December 2019 due to error. Appellants have not cited any law or evidence in the record to the contrary.

### 1. This Court Does Not Have "Original Jurisdiction" to Hear a Collateral Attack on the Judgment.

Appellants assert this court has original jurisdiction to vacate a void judgment or order, citing *Dhawan v. Biring* (2015) 241 Cal.App.4th 963, 974 (*Dhawan*), *People v. West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 467 (*West Coast Shows*), and *Costa v. Banta* (1950) 98 Cal.App.2d 181, 182 (*Costa*), for the proposition that a party may collaterally attack a judgment for the first time on appeal. Appellants' reliance on these authorities is unavailing, as these cases do not authorize this court to hear a collateral attack on an allegedly void judgment in the first instance, without the party seeking to defeat the judgment first raising his or her arguments to the trial court.

In *Dhawan*, the trial court granted a motion to vacate and set aside a default judgment seven years after its entry because it was void under section 580. Reviewing the issue de novo, the appellate court affirmed the trial court's order, confirming that a void order is subject to collateral attack at any time. (*Dhawan*, *supra*, 241 Cal.App.4th at pp. 966, 967, 973.) The appellate court did not hear the request to set aside the default judgment in the first instance.

In *West Coast Shows*, the trial court issued orders directing production of certain documents pursuant to a subpoena duces tecum. After appellants filed notices of appeal of those orders, the trial court set the orders aside as void and unenforceable. (*West Coast Shows*, *supra*, 10 Cal.App.3d at pp. 466-467.) In dismissing the appeals as moot because the orders had been set aside, the appellate court determined that the trial court had jurisdiction to set aside void orders even after they had been appealed, thus serving as an exception to the standard rule staying further proceedings on an appealed order. (*Id*. at p. 467.) As in *Dhawan*, the appellate court in *West Coast Shows* did not exercise original jurisdiction to find the orders void.

Finally, in *Costa*, a candidate in an election filed an election contest in the relevant trial court; he thereafter appealed the resulting judgment. (*Costa*, *supra*, 98 Cal.App.2d

20

at p. 181.) Citing an opinion issued after the court entered the judgment, on appeal the respondent attacked the trial court's jurisdiction to hear the election contest at all. (*Id.* at pp. 181-182.) The appellate court dismissed the appeal because the trial court lacked jurisdiction to issue the judgment. (*Id.* at p. 182.) The court did not consider generally whether it had original jurisdiction to hear a collateral attack on an allegedly void judgment.

As the legal authority cited by Appellants does not persuade us that this court has original jurisdiction to hear a collateral attack on the 2015 default judgment, we will consider only those arguments properly raised to the trial court, or otherwise recognized as cognizable for the first time on appeal.

### 2. Section 473, Subdivision (d)

Section 473, subdivision (d), allows the trial court to "set aside any void judgment or order." While the trial court has discretion to grant or deny a request to set aside a void order, it has no power under section 473, subdivision (d) to set aside an order that is not void. (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020 (*Pittman*).) We apply the de novo standard of review to the trial court's determination of whether the 2015 default judgment is void. (*Ibid*.)

"In determining whether an order is void for purposes of section 473, subdivision (d), courts distinguish between orders that are void on the face of the record and orders that appear valid on the face of the record but are shown to be invalid through consideration of extrinsic evidence. 'This distinction may be important in a particular case because it impacts the procedural mechanism available to attack the judgment, when the judgment may be attacked, and how the party challenging the judgment proves that the judgment is void.' [Citation.]" (*Pittman, supra,* 20 Cal.App.5th at pp. 1020-1021.) There is no time limit in which to challenge an order under section 473, subdivision (d). (*Pittman*, at p. 1021.) However, section 473, subdivision (d) applies only to an order that is void on its face—that is, an order where "the invalidity is apparent from an inspection

21

of the judgment roll or court record without consideration of extrinsic evidence. [Citations.] . . . If the invalidity can be shown only through consideration of extrinsic evidence, such as declarations or testimony, the order is not void on its face. Such an order must be challenged within the six-month time limit prescribed by section 473, subdivision (b), or by an independent action in equity. [Citations.]" (*Ibid*.)

Where a defendant does not answer the complaint, the judgment roll consists of "the summons, with the affidavit or proof of service; the complaint; the request for entry of default with a memorandum indorsed thereon that the default of the defendant in not answering was entered, and a copy of the judgment. . . ." (§ 670; *Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 960-961.)

Although the Garrards referenced the trial court's ability to set aside the judgment in a separate equitable action, they ultimately sought relief under section 473, subdivision (d). They claimed the 2015 default judgment was void on its face, a characterization the trial court confirmed with the Garrards during the hearing on the motion to vacate. In ruling on the Garrards' motion to vacate the 2015 default judgment, the trial court properly limited its review to a determination of whether the judgment was void on its face based on the judgment roll. Reviewing the matter de novo, we first consider whether the trial court erred in denying the motion to vacate pursuant to section 473, subdivision (d).

### a. Based on the Judgment Roll, the 2015 Default Judgment is Valid on its Face
#### i. The judgment roll does not reveal a failure to comply with section 580

Section 580, subdivision (a), provides, "The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115; but in any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue. The court may impose liability, regardless of

22

whether the theory upon which liability is sought to be imposed involves legal or equitable principles."[10]  Citing this statute, Appellants claim the judgment roll reveals several errors in notice concerning the 2015 default judgment.

We first address Appellants' contention that the "Soldiers and Sailors Civil Relief Act declaration" contained in the request to enter Kenneth's default was not competent, as it was dated February 20, 2014, before the Investors filed the 2014 lawsuit.[11]  Appellants do not cite any legal authority in support of the incompetency claim, and have thus waived the argument on appeal.  (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418.)

Appellants' remaining contentions concern the adequacy of notice of the relief the Investors would seek at the default prove-up hearing.  They allege the 2014 complaint, which is part of the judgment roll, did not give sufficient notice of the relief the Investors intended to seek, claiming that the complaint was "ambiguous and self-contradictory" such that the court should not have "supposed" "[a]ctual or constructive notice" of the requested relief from the complaint alone.  Rather, Appellants argue 1) that the Investors should have filed an amended complaint when they decided to abandon several of the causes of action prior to the default hearing, and 2) the Investors should have served a request for non-monetary relief prior to the default hearing, in line with the demand for monetary relief required in a monetary relief case.  Appellants further argue that the

---

[10] Section 580 requires the service of a separate statement of damages in cases involving recovery of damages for personal injury or wrongful death (section 425.11), or where the plaintiff intends to seek punitive damages under Civil Code section 3294 (section 425.115).  This case does not fall under either section 425.11 or 425.115.

[11] In seeking entry of default, plaintiffs are required to confirm that "[n]o defendant named in [the request] is in the military service so as to be entitled to the benefits of the Servicemembers Civil Relief Act (50 U.S.C. App. § 501 et seq.)."  (See Cal. Rules of Court, rule 3.1800(a)(5); mandatory Judicial Council form *Request for Entry of Default* (form CIV-100) at § 8.)  Appellants do not allege that Kenneth was in military service at the time the trial court entered his default.

23

request to enter Kenneth's default should have been served more than one court day prior to the default hearing, in order to provide him appropriate notice.

Relevant to the issue of notice, in setting forth the causes of action in the 2014 complaint, Appellants do not dispute that Investors sought non-monetary relief: "[d]eclaratory relief to obtain a ruling from the court in this dispute regarding Garrard's obligations to pay interest from and after March 13, 2013 and to execute the Note #2"; "an equitable order from the court, for specific performance under the specific terms and conditions of the signed Agreement and subsequent verification by Garrard to execute Note #2, which will allow Plaintiff Investors to go forward with non-judicial foreclosure"; ". . . execution of the Promissory Note #2 . . ."; "a legal and equitable determination of [the parties'] rights and obligations, such that either title be immediately restored to plaintiffs or plaintiffs are granted an order allowing for non-judicial foreclosure to commences [*sic*], as though Garrard had executed the Note #2 . . . ." In the prayer for relief, the Investors asked for "[s]pecific performance by execution of the Note 2" and "Declaratory Relief that Defendant Garrard had an obligation as of March 13, 2013, to execute and deliver a promissory note according to the terms in Note #2, and payments from that date forward." A copy of Note #2 was attached to the complaint. Ultimately, the trial court ordered "that [Note #2] is the obligation of [the Garrards]. The effective date of the Note for purposes of when the obligation shall have begun is March 11, 2013 [the date of the rescission of the Trustee's Deed upon sale]. Said defendants are ordered to sign the Note. Failure of the defendants to sign the Note shall not invalidate the Note as it shall be valid, in its current state, for all purposes including non-judicial foreclosure."

The cases Appellants cite in support of their argument that the Investors should have filed and served an amended complaint prior to seeking the default judgment do not support their contention that parties seeking default judgments for *less* relief than was demanded in the complaint are required to file an amended complaint before doing so. In

*Thorson v. Western Development Corp.* (1967) 251 Cal.App.2d 206 (*Thorson*), the appellate court did not address the need to file an amended complaint prior to a default hearing. Rather, it confirmed that the trial court exceeds its jurisdiction in a default proceeding if the judgment *exceeds* the plaintiff's demand or gives relief where *no demand* is made. (*Id*. at p. 212, italics added.) It further indicated that it could consider both the allegations of a complaint and the prayer for relief to determine if the defendant received proper notice if the relief requested was mentioned in the complaint and the award was not in excess of the demand. (*Id*. at p. 213.) The court in *Thorson* determined that, "[w]hile plaintiffs' complaint might properly contain separate counts seeking inconsistent forms of relief [citations], they may not pursue both to a final judgment, but must instead prior to that event elect between the inconsistent remedies previously pleaded. [Citations.]" However, the court did not hold that the proper procedure for doing so was to file an amended complaint prior to the default hearing. Rather, it resolved any uncertainty in the basis of the award in favor of the judgment based on the judgment roll. (*Id*. at pp. 214-215.) It then found that the defendant's contentions relating to the insufficiency to state a cause of action were without merit, as the trial court had jurisdiction of the parties and subject matter, and the complaint apprised the defendant of the plaintiff's demand. (*Id*. at p. 215.)

In *Dhawan*, *supra*, 241 Cal.App.4th 963, the appellate court determined that a default judgment exceeded the trial court's jurisdiction because the complaint did not specify the amount of monetary damages sought, and the plaintiff did not serve an amended complaint setting forth the specific amount prior to seeking default judgment. However, the facts of *Dhawan* are easily distinguishable from those in the instant matter. In *Dhawan*, the plaintiff filed a complaint alleging contract and fraud-based causes of action seeking general and special damages "according to proof," and punitive damages as allowed by law. (*Id*. at p. 966.) After obtaining entry of default against the defendant, the plaintiff served the defendant with a statement of damages setting forth the monetary

25

amount plaintiff wanted the trial court to award; in issuing a default judgment, the trial court awarded less than the plaintiff requested in the statement of damages. (*Id.* at p. 967.) The defendant filed a motion to vacate the judgment under section 473, subdivision (d), contending the judgment was void under section 580 because the damages exceeded the amount requested in the complaint. (*Ibid.*) The appellate court found that a statement of damages was insufficient in a case concerning contract and fraud-based damages, as section 580 did not authorize a statement of damages in such a case; instead, the plaintiff had to file and serve an amended complaint. (*Dhawan*, at pp. 968-973.) Because the complaint did not state the amount of damages being sought, the trial court exceeded its jurisdiction under section 580 by entering the default judgment. (*Id.* at pp. 972-973.) Here the Investors set forth the requested relief in the complaint and, again, did not seek relief in the form of monetary damages.

Similarly, we distinguish *Levine v. Smith* (2006) 145 Cal.App.4th 1131 (*Levine*). The plaintiff in *Levine* filed a complaint alleging damages "in an amount according to proof," based on causes of action for professional negligence, breach of contract, fraud, and emotional distress based on the defendant's alleged failure to provide competent legal services. (*Id.* at pp. 1134, 1136.) The plaintiff later filed a statement of damages specifying the amount she was seeking prior to entry of default against the defendant. (*Id.* at p. 1136.) However, because the action was for legal malpractice, not personal injury or wrongful death, the trial court found, and the appellate court agreed, that a statement of damages did not satisfy the requirements of section 580. The court reasoned that because the complaint did not include a demand for a specific amount of damages, the judgment necessarily exceeded the amount requested, rendering it void. (*Id.* at p. 1137.) The holding in *Levine* did not preclude the trial court here from entering judgment on the original 2014 complaint in conformance with the specific non-monetary relief demanded in that complaint.

26

Appellants ask this court to read into section 580 a requirement that a party seeking non-monetary damages in a complaint serve a statement of damages akin to that required to seek monetary damages in cases under section 425.11 and 425.115. The cases they cite in support of this request do not compel such an interpretation of the statute. In *Greenup v. Rodman* (1986) 42 Cal.3d 822, 829-830 (*Greenup*), a case in which the trial court struck the defendants' answer as a discovery sanction and then entered default and default judgment, the California Supreme Court held that an award of monetary damages in excess of the jurisdictional limits of a limited jurisdiction court had to be reduced to meet the ceiling on damages allowed in such a court. Alternatively, the court determined that plaintiff should be allowed to amend her complaint to seek a different amount of damages or other appropriate relief. (*Id*. at p. 830.) In doing so, the court, citing *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 494 (*Becker*), confirmed that the allegations of the complaint–giving notice that plaintiff was seeking at least the maximum amount of damages allowed in a limited jurisdiction proceeding–could cure a defective prayer for damages. (*Greenup, supra*, at pp. 829-830.) The Supreme Court did not address the need to serve a separate statement of damages in an action for non-monetary relief. Rather, the holding in *Greenup* supports the trial court's determination that the complaint at issue gave the Garrards appropriate notice of the requested relief.

In *Becker*, another case relied on by Appellants, "the underlying complaint sought damages 'in excess of $20,000 . . . or according to proof,' punitive damages of $100,000, and costs[;]" the default judgment awarded over $26,000 in compensatory damages and attorney fees. (*Becker, supra*, 27 Cal.3d at pp. 491-492.) The defendants argued that the judgment violated section 580 because the largest amount of compensatory damages referenced in the prayer was $20,000. Plaintiffs argued that section 580 did not limit recovery to the specific amount stated in the complaint, so long as the complaint gives notice of the type of recovery sought. (*Id*. at p. 493.) As Appellants state, the Supreme

27

Court determined that "the language of section 580 does not distinguish between the type and the amount of relief sought." (*Ibid*.) However, the Supreme Court did not extend its holding to the circumstance where the complaint at issue involves non-monetary claims. Rather, the court held that a specific amount of damages had to be alleged in either the prayer, or if requesting damages "according to proof," in the body of the complaint. (*Id*. at p. 494.) Because the only specific amount of compensatory damages set forth in the complaint was $20,000, the Supreme Court held that the trial court exceeded its jurisdiction by awarding more than that. (*Ibid*.; accord *Janssen v. Luu* (1997) 57 Cal.App.4th 272, 279; *Parish v. Peters* (1991) 1 Cal.App.4th 202, 207-210 [where complaint seeks damages "according to proof," personal injury plaintiff must serve a pre-default statement of damages even if not explicitly required by section 580 for personal injury complaints served by publication].) Again, as the Investors' complaint set forth a request for the relief ultimately awarded by the trial court in the 2015 default judgment, the Garrards received proper notice under *Becker*.

*Burtnett v. King* (1949) 33 Cal.2d 805, addresses a situation involving a non-monetary judgment. In a divorce proceeding, a wife obtained a default judgment against a husband in which the trial court awarded the couple's community property to the wife, who thereafter sold the property to the defendants. (*Id*. at p. 806.) In a quiet title action brought by the husband, the defendants asserted the defense of res judicata based on the divorce judgment. (*Ibid*.) The California Supreme Court determined that the wife's complaint for divorce did not mention the community property or request the trial court to award it to either spouse. (*Id*. at p. 806.) Based on section 580, the court held that the trial court lacked jurisdiction in the divorce proceeding to render judgment regarding the community property because wife did not "assert[], claim or pray[] for" the requested relief in her complaint, rendering the resulting judgment void. (*Id*. at p. 807.) Here, the 2015 default judgment does not violate "the policy underlying [section 580] . . . that in default cases, defendant must be given notice of what judgment may be taken against him

28

against him—a policy underlying all precepts of jurisprudence and protected by our constitutions. If a judgment other than that which is demanded is taken against him, he has been deprived of his day in court—a right to a hearing on the matter adjudicated." (*Id*. at p. 808.) The Garrards had notice of the judgment that might be taken against them; the relief awarded by the trial court did not exceed that set forth in the complaint.

Caselaw cautions that where the nature of the proceeding does not lend itself to specificity with respect to alleging damages in the complaint, the trial court must ensure that the defendant received proper notice of the requested damages before entering default and issuing a default judgment. A plaintiff might be required to serve an additional notice akin to a statement of damages prior to default. (See *Warren v. Warren* (2015) 240 Cal.App.4th 373, 377-379 [where damages in an action for accounting were not plead in the complaint, and defendants had no additional notice of the potential damages, trial court erred in entering default judgment], disapproved on other grounds by *Sass v. Cohen* (2020) 10 Cal.5th 861, 887, fn. 12.) The complaint filed in the 2014 lawsuit did provide the Garrards notice of the requested relief and the 2015 default judgment awarded the relief requested in the complaint.

Finally, Appellants allege the request to enter Kenneth's default was served on the Friday before the Monday May 11, 2015 default hearing, which Appellants contend was inadequate notice as a matter of law, citing *Behm v. Clear View Technologies* (2015) 241 Cal.App.4th 1, 10 (*Behm*), and *Matera v. McLeod* (2006) 145 Cal.App.4th 44, 62 (*Matera*). In each of these cases, the appellate courts addressed whether defendants received proper notice of the requested damages in cases wherein the complaints did not specify the amount of monetary damages requested, and the plaintiffs were required to serve a statement of damages under sections 580, 425.11, and/or 425.115 before taking the defendants' default. (*Behm*, at pp. 8-13; *Matera*, at pp. 49, 52, 60-62.) In each, service of the statement shortly before entry of the judgment was insufficient to meet due process requirements. (*Behm*, at pp. 11-13; *Matera*, at p. 62.) By comparison, the

complaint filed in the 2014 lawsuit did set forth the relief requested by the Investors; there is no dispute the Garrards were served with that complaint well in advance of the trial court entering their defaults. As the complaint satisfied the notice requirements, and the Investors sought relief contained within the complaint at the default hearing, there was no need for the Investors to provide the Garrards additional notice. None of the relevant statutes specify that a request to enter default on a complaint that sets forth the requested non-monetary relief must be served a specified time before the default hearing.

### ii. *On its face the judgment does not require payment of usury*.

Appellants contend that the 2015 default judgment effectively created a debt that was already past due at the time the court entered the judgment. Alleging that the loan bears usurious interest of at least 11 percent, Appellants argue that the 2015 default judgment is void because it imposed usury on them.

"The California Constitution, article XV, section 1, states 'No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action.' [fn. omitted.] The essential elements of usury are: (1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 798.) "A transaction is rebuttably presumed not to be usurious. [Citations.] The borrower bears the burden of proving the essential elements of a usurious transaction. [Citations.]" (*Id*. at pp. 798-799.)

Under the promissory note attached to the 2015 default judgment, the Garrards owed interest at a rate of 5 percent per year which began to accrue on March 11, 2013, the date the trustee's deed upon sale was rescinded; the Garrards were to make interest

only payments beginning on March 11, 2013. The note included a late charge of ten percent on any interest payment that was more than ten days late. Appellants contend this creates a total amount of almost $25,000 due upon the date of entry of the judgment, which would reflect an overall interest rate of 11.25 percent.

Late charges are not regarded as interest on the loan itself, and thus do not make the promissory note usurious. "Whether a transaction is usurious must be determined as of the time of the transaction. An agreement which is not usurious in its inception cannot become so by reason of the borrower's subsequent default. [Citations.] The penalty provisions to which [the appellant] now objects come into play only in the event of his default. Such payments are not regarded as interest on the loan itself, but as a penalty for nonperformance of a legitimate agreement. [Citation.] The late charge provisions contained in the note do not make it usurious." (*First American Title Ins. & Trust Co. v. Cook* (1970) 12 Cal.App.3d 592, 596-597.)

Looking only at the judgment roll, on its face the interest included in the promissory note attached to the 2015 default judgment is not usurious. The Garrards owed interest at a rate less than the maximum legal amount (Civ. Code, § 1916-1); the late fee was not due at the inception of the agreement, which, on the judgment roll, was March 11, 2013. Appellants have not shown that the judgment was void on its face as a result of usury.

As both the trial court and Respondents noted, even if interest in the promissory note was usurious, that does not render the entire promissory note void, but instead voids only the interest provisions. (Civ. Code, § 1916-2 [the agreement to pay usurious interest is void and the debt is not due until the full period of time it was contracted for has elapsed]; *Epstein v. Frank* (1981) 125 Cal.App.3d 111, 122-123.) A contract with a usurious interest provision is voidable, not void (*Sosin v. Richardson* (1962) 210 Cal.App.2d 258, 266), and thus not subject to set aside under section 473, subdivision (d), which only addresses void judgments. (See *Lee v. An* (2008) 168 Cal.App.4th 558, 566.)

31

### iii. *On its face the judgment does not enforce an illegal transaction or a contract that violates a consumer protection statute.*

Appellants allege that the 2006 trust deed was part of an "illegal transaction" rendering the 2015 default judgment void; they further claim the "illegality of the 2006 Trust Deed appears on the face of the judgment roll. . . ." In the complaint filed in the 2014 lawsuit, the Investors alleged that "a mortgage broker who, unknown to the Investors, cut corners and created a usurious promissory note (Note #1) on the Subject Property by failing to use a California broker licensed with the California DRE for a mortgage loan which charged interest in excess of 10% per annum." The 2011 settlement agreement attached to the complaint states that the loan entered into in 2006 "was unlawfully brokered by [the Investors'] agent, David Shapiro, who is not a licensed broker in the State of California, where the loan was transacted and Laguna is located. Among other consequences of this fact, the terms of the loan and security for the loan are unenforceable." Arguing that brokering a loan without a license is a "public offense" under Business and Professions Code section 10130, a statute enacted for the protection of the public, Appellants contend the contract is void. Appellants further argue that the interstate communications necessary to broker the loan across state lines constituted a federal crime. To the extent the 2011 settlement agreement attempted to purge the 2006 deed of any alleged illegality, Appellants allege that such illegality cannot be waived or ratified.

Under Business and Professions Code section 10130, it is unlawful for someone to act as a real estate broker without a license. "The purpose of the licensing requirements is to protect the public from incompetent or untrustworthy practitioners. [Citation.]" (*Akopyan v. Wells Fargo Home Mortgage, Inc.* (2013) 215 Cal.App.4th 120, 131.) Generally, where a statute is designed for the protection of the public, a contract in violation of that statute is void. (See *Gruzen v. Henry* (1978) 84 Cal.App.3d 515, 518-519 (*Gruzen*).) Thus, Appellants allege the 2006 trust deed, to the extent it was part of

32

the 2006 unenforceable promissory note, was void, and that invalidity appears on the face of the record. They further contend that the illegality could not be purged by the 2011 settlement agreement, or alleged agreement adopted in the 2015 default judgment and attached promissory note to modify the loan and adopt the 2006 trust deed as security for the new, modified loan.

Notably, in the 2014 lawsuit, the Investors were not seeking to enforce the 2006 promissory note; they were seeking to enforce the 2011 settlement agreement and the alleged agreement in January 2013 to execute a new promissory note (Note #2), which would be secured by the 2006 deed of trust. The legal authority cited by Appellants does not support the argument that the parties were unable to modify the loan agreement to remove any potentially illegal provisions. In *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*), the California Supreme Court found that various provisions in an arbitration agreement made it unenforceable, as those unlawful provisions permeated the entire agreement, and there was no provision the court could strike to "remove the unconscionable taint from the agreement." (*Id*. at pp. 124-125.) The Supreme Court did not hold that the parties to the unconscionable agreement could not renegotiate the agreement in order to "remove the unconscionable taint."[12] In fact, the *Armendariz* court recognized that, where the alleged illegality of a contract is collateral to the main purpose of a contract, and the illegal provision can be severed or restricted from the contract, it is appropriate to do so. (*Armendariz*, at p. 124.) That is effectively what the Investors and the Garrards did when they agreed in 2011 and

---

[12] Both Appellants and Respondents on appeal agree that parties to a contract may resolve at least some defects in a debt agreement by executing a new obligation. For example, "[t]hough a contract is tainted with usury, the abandonment of the usurious agreement and the execution of a new obligation for the amount of the actual debt free from the usury and bearing only legal interest, purges the original usury and makes the second obligation valid and enforceable. [Citation.]" (*Whittemore Homes, Inc. v. Fleishman* (1961) 190 Cal.App.2d 554, 560.)

33

2013 to modify the loan to remove the allegedly usurious interest provision and address the concerns regarding the licensing status of the original loan broker. Appellants have not shown on the face of the judgment roll that the 2011 or 2013 agreements were illegal, or that they violated consumer protection policies.

### b. The "Hill Rule" Did not Apply to Appellants' Motion to Vacate

Appellants contend that the so-called "*Hill* Rule" allowed the trial court to consider certain extrinsic evidence in determining whether the 2015 default judgment was subject to set aside under section 473, subdivision (d). "[A]n exception exists to the rule barring collateral attacks to judgments that appear valid on the face of the record. [Citation.] As our high court explained many years ago, if a party admits facts showing that a judgment is void, or allows such facts to be established without opposition, then, as a question of law, a court must treat the judgment as void upon its face. (*Hill v. City Cab & Transfer Co.* (1889) 79 Cal. 188, 191, 21 P. 728 (*Hill*); [citations].) We describe this exception as the '*Hill* rule.' " (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1328-1329 (*OC Interior*).) Appellants argue the trial court erred in "refusing to consider declaration testimony and discovery responses containing admissions by defendants showing the default was based on a fraud on the court and the default judgment awarded relief contrary to law. . . ."

Appellants themselves describe their motion to vacate the 2015 default judgment as a direct attack on the judgment, rather than a collateral attack. As such, the *Hill* rule, which applies in collateral attacks, does not apply in these proceedings.

### D. Issues Related to Richardson and Martin

Richardson asks the court to exercise its original jurisdiction to determine whether the interveners are bound by the 2015 default judgment. As discussed in section II.C.1., *ante*, the legal authority cited by Appellants does not give this court original jurisdiction to determine the validity of the judgment in the first instance. The trial court has not

ruled on issues of privity, issue preclusion, or claim preclusion as to Richardson and thus we will not hear them for the first time on appeal. Nor has the trial court determined Martin's status as a bona fide purchaser, or otherwise made orders in the rulings being reviewed that are specific to Martin in this action. As such we do not address the arguments proffered by Appellants and Martin as to Martin's status as a bona fide purchaser, the seniority of Richardson's lien as it pertains to Martin, or other issues as to the effect of the trial court's August 18, 2021 order on the claims asserted against Martin.[13]

### III.    DISPOSITION[14]

The August 18, 2021 order denying the Garrard's motion to vacate the 2015 default judgment is affirmed. The appeal from the August 18, 2021 order granting Respondents' motion for judgment on the pleadings, or otherwise striking portions of the pleadings, is dismissed as premature and/or taken from a nonappealable order.

---

[13] Appellants filed two requests asking this court to take judicial notice of various documents purportedly demonstrating that extrinsic evidence revealed the invalidity of the 2015 default judgment, and/or in reply to arguments asserted by Martin in its respondent's brief. As this court is not reviewing the substance of the extrinsic evidence Appellants seek to present to the trial court to support their direct attack on the judgment by independent equitable action, or considering arguments regarding Martin's status as a bona fide purchaser or junior lienholder, we deny the requests for judicial notice.

[14] To the extent Appellants raise additional arguments in their briefs directed at the one action rule, or the substantive claims that extrinsic evidence reveals the invalidity of 2015 default judgment, we do not address those herein, given our holdings, *ante*.

_____
Greenwood, P. J.

WE CONCUR:


_____
 Danner, J.




_____
 Wilson, J.




Garrard et al. v. Total Lender Solutions
No. H047728